NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 18-11762 (RK) (RLS) |
| v. | **OPINION** |
| THOMAS DRISCOLL, *et al.*, | |
| Defendants. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court by way of Plaintiff United States of America's ("Plaintiff" or "the Government") Motion for Summary Judgment. (ECF No. 75; ECF No. 75-1 ("Pl. Mot.").) Defendants Dr. Thomas Driscoll ("Dr. Driscoll") and Jeanne Driscoll (collectively, the "Driscolls") responded to the Motion but do not oppose it, instead opposing only the Government's proposed Order of Sale and proposing amendments to that Order. (*See* ECF No. 77.) Defendant William Christopher Vockroth ("Defendant" or "Dr. Vockroth") opposes the Motion. (ECF No. 78 ("Def. Opp.").)

The issues before the Court are purely legal and the parties have not identified any genuine dispute of material fact. The Court has considered the parties' submissions and resolves these matters without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons below, Plaintiff's Motion for Summary Judgment is **GRANTED.**

## I.    BACKGROUND

Here, Plaintiff, United States of America, seeks to collect longstanding, significant, and delinquent tax arrearages owed by Defendant, Dr. Thomas Driscoll, a dentist. The only viable

assets of Dr. Driscoll, which might cover the approximately $500,000 due in owing appear to be his dental practice, which he operates with co-defendant, Dr. Vockroth, in an LLC, and the physical office suite they co-own as tenants in common, in which the practice operates. The Government seeks a forced sale of both the LLC and the office suite.

## A. PROCEDURAL HISTORY

On July 18, 2018, the Government filed suit against the Driscolls to collect unpaid income taxes for the years 2010–2015. (ECF No. 1.) The matter was administratively closed due to a government shutdown in late 2018, and then again when the Driscolls filed for bankruptcy in late 2019. (ECF Nos. 16, 21); *see also In re Driscoll*, No. 19-10110 (Bankr. D.N.J. 2019); *In re Driscoll*, No. 19-29724 (Bankr. D.N.J. 2019). More than two years later, on January 12, 2022, the Honorable Michael A. Shipp, U.S.D.J. lifted the stay "in light of the conclusion of all pending bankruptcy proceedings." (ECF No. 23.) The Government subsequently filed an Amended Complaint, adding additional parties and extending the term of unpaid taxes owed to 2020. (ECF No. 29.) In addition to the Driscolls and Dr. Vockroth, five entities were named as Defendants in the Amended Complaint pursuant to 26 U.S.C. § 7403(b) as follows: (1) PNC Bank; (2) The State of New Jersey, Division of Taxation; (3) Corporation Service Company; (4) Huntington Bancshares Incorporated; and (5) 1st Constitution Bank. (ECF No. 29 ¶¶ 5–11.)

On October 7, 2022, the Government entered into a Consent Judgment with the Driscolls, and Judge Shipp entered judgment in favor of the Government for a total of $474,264.04 in unpaid taxes. (ECF No. 61.) Judge Shipp then entered default judgment against four of the defendants on November 22, 2022, and "enjoined them from taking any value from the sale of any property sold in this case." (*See* SUMF ¶ 9; ECF Nos. 64–65.) Only Dr. Vockroth and 1st Constitution Bank remained. (*Id.*) 1st Constitution Bank, which holds a mortgage on the Real Property, agreed with

the Government that it could recover on its mortgage before the United States recovers on the tax debts, in the event of a sale of the Real Property. (*See* SUMF ¶ 10; ECF No. 10). Lakeland Bank has taken over the mortgage from 1st Constitution Bank and remains a party to this case. (ECF No. 86.)

On April 5, 2023, the Government filed the present Motion for Summary Judgment, petitioning this Court to decree a forced sale of two properties in which Dr. Driscoll owns a partial interest, pursuant to 26 U.S.C. § 7403. (*See generally* Pl. Mot.) The Government appended a proposed Order of Sale. (ECF No. 75-8.) On April 21, 2023, the Driscolls filed a letter in which they did not dispute their tax liability and did not argue against the foreclosure of the property, but did oppose certain provisions of the Order of Sale. (ECF No. 77.) On May 1, 2023, Defendant Vockroth filed his opposition to the Government's Motion, not contesting the Driscolls' tax liability, but objecting to the sale of the entire property and arguing instead for the Government to foreclose on Driscoll's interests alone. (*See* Def. Opp.) The Government replied on May 8, 2023.[1] (ECF No. 79 ("Pl. Rep.").) An extended period of time ensued wherein Drs. Driscoll and Vockroth purportedly attempted to sell both the dental practice and the real property and avoid a foreclosure.[2] (*See, e.g.*, ECF No. 93.) On November 20, 2024, the parties represented to this Court that they were not able to reach any agreement. (ECF No. 95.) The Motion is therefore now fully briefed and ready for the Court's disposition.

## B. FACTUAL BACKGROUND

### i. The Driscolls' Tax Delinquency

For reasons not at issue in the present Motion, the Driscolls failed to pay federal income

---

[1] On May 15, 2023, this case was assigned to the Undersigned. (ECF No. 80.)

[2] During discussions of a possible sale, the Court administratively terminated the Government's pending Motion, and agreed not to consider it until contract negotiations concluded. (*See* ECF No. 85.) The Motion was reinstated on November 20, 2024. (ECF No. 95.)

taxes (IRS Form 1040) for every year from 2011 to 2020. (SUMF ¶ 1.) The Driscolls had assessments made against them by the Government. (*Id.*) Those taxes remain unpaid. (*Id.* ¶ 3.) Pursuant to a Consent Judgment entered on October 7, 2022, (ECF No. 61), it is undisputed that the Driscolls owe the Government $474,264.04 in unpaid taxes, "including interest and statutory additions as of December 27, 2021, plus further interest and statutory additions that will continue to accrue according to law." (*Id.* ¶ 4.) No party contests the Driscolls' liability to the Government, nor the amount that the Driscolls owe the Government. (*See* SUMF ¶ 4; ECF No. 77 at 1 ("[Driscoll] Defendants do not dispute liability in this matter.").)

### ii.    The Foreclosure

In order to collect on the significant sum of overdue taxes, the Government placed liens on the Driscolls' property and rights to property. (SUMF ¶ 2); *see also* 26 U.S.C. § 6321 (allowing for a lien to be placed on "all property and rights to property" belonging to "any person liable to pay any tax neglects"). Dr. Driscoll owns a co-interest in two properties[3] on which the Government placed liens: a dental office suite and a dental practice. Specifically, Dr. Driscoll owns a 50% interest in dental office suite—a parcel of real property—located at 258 Broad Street, Unit 1, in Red Bank New Jersey (the "Real Property") and a 50% interest in a dental practice—Red Bank Dental Associates, LLC (the "LLC"). (SUMF ¶¶ 5, 7–8.) For each property, the other 50% interest is owned by fellow dentist, Dr. William Vockroth. (*Id.* ¶¶ 6, 8.) Drs. Driscoll and Vockroth own Real Property as tenants in common. (*Id.* ¶ 6.) They are also the only two owners of the LLC, each owning 50% as partners. (*Id.* ¶ 8.) Dr. Vockroth certifies that the dental practice also employs five people, though they are not owners of the LLC. (Dr. Vockroth Cert. ¶ 1; *see also* Def. Opp. at 9.)

---

[3] "Property" here refers not only to real property, but "all property and rights to property, whether real or personal." *See* 26 U.S.C. § 6321.

The LLC is a dental practice that operates from the Real Property unit, which is a dental office suite.

It is undisputed that Dr. Vockroth has no liability as to the Government in the present matter. Up to the present time, Dr. Vockroth does not owe taxes, he is not in any way responsible for his business partner, Dr. Driscoll's, delinquencies that are the subject of this present motion, and Dr. Vockroth has not had any liens placed on his property interests. Still, Dr. Vockroth was properly joined as a Defendant in this case because he may "claim[] any interest in the property involved" in the action. 26 U.S.C. § 7403(b).

Having placed liens on Dr. Driscoll's interest in both the Real Property and the LLC, the Government now seeks to collect the owed payment by foreclosing upon the entirety of both the properties pursuant to 26 U.S.C. § 7403(c) even though only the Driscolls owe back taxes to the Government, and the Government has only placed liens on Dr. Driscoll's interests in the Real Property and the LLC. *See* 26 U.S.C. § 7403(c) (allowing a district court to "decree a sale" and "distribute the proceeds of such sale" to satisfy the interests of the parties and of the United States).

## II.    **LEGAL STANDARD**

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248).

"The Court must view the facts and evidence presented on the motion in the light most

favorable to the nonmoving party." *Razak*, 951 F.3d at 144 (citing *Anderson*, 477 U.S. at 255); *see also Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008). Summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). While a "judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial[,]" *Anderson*, 477 U.S. at 249, a non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citations omitted). A non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.  DISCUSSION

Since there are no genuine issues of material fact,[4] the issue before the Court is narrow and purely one of law: whether the Government is permitted to conduct a forced sale of the entire Real Property and LLC, despite the fact that only the Driscolls—and not Dr. Vockroth—were

---

[4] Summary Judgment is only proper when "viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). The Court's first task, then, is to determine whether there is any genuine issue of material fact. *Weingarten v. First Mortg. Co. of Pa.*, 466 F. Supp. 349, 350 & n. 2 (E.D. Pa. 1979) ("The concern of Rule 56 is whether issues of *material* fact, as distinguished from issues of fact, are in dispute." (emphasis added)). Appended to its Motion, the Government submitted a "Statement of Undisputed Material Fact." (ECF No. 75-2 ("SUMF").) Defendant Vockroth, in contravention of this District's Local Rules, did not furnish any competing statement of fact, and did not indicate any agreement or disagreement with the Government's Statement. *See* Local. Civ. R. 56.1(a). Therefore, all of the Government's material facts "shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Additionally, although most cases arising under § 7403 address specific valuations of the properties at issue, neither party here has provided any valuation. The Court does not deem the financial value of the property a material fact for the purposes of summary judgment. *See United States v. Cardaci*, 856 F.3d 267, 275 (3d Cir. 2017).

delinquent on their taxes. While Dr. Vockroth owes no debts to the Government, the plain language of 26 U.S.C. § 7403 is clear. As described by the Supreme Court, 26 U.S.C. § 7403 contemplates "not merely the sale of the delinquent taxpayer's own interest, but the sale of the *entire property* (as long as the United States has any 'claim or interest' in it)." *United States v. Rodgers*, 461 U.S. 677, 693–94 (1983) (emphasis added) (internal citation omitted). It is clear that "tak[ing] into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibilities that innocent third parties will be unduly harmed by that effort[,]" *id.* at 709, the Government is entitled to a complete sale of both the Real Property and the LLC, and summary judgment in their favor is appropriate.

### A. PRELIMINARY CHALLENGES TO FORECLOSURE OF THE LLC

The Court begins by entertaining two preliminary arguments from Dr. Vockroth with regards to why his interest in the LLC cannot be foreclosed upon: *first*, that the LLC as a separate entity was not properly joined as a party to this case and therefore any forced sale would violate the LLC's due process rights, (Def. Opp. at 11–13), and *second*, that even if the Court were to grant summary judgment against the LLC, the only appropriate remedy is for the Government to file a Charging Order,[5] not a forced sale. Neither of these arguments is viable; and a forced sale of the LLC under 26 U.S.C. § 7403 is appropriate—so long as the *Rodgers* factors are satisfied. (*See* Section III.B–C, *infra*.)

Dr. Vockroth first argues that, because the LLC is not a named party to the present action, allowing a forced sale would violate the LLC's due process rights. (Def. Opp. at 11.) Dr. Vockroth relies on the fact that, under New Jersey law, LLCs are separate entities that do not take on the

---

[5] A Charging Order is a process that is used to "charge the [] interest" of an LLC member, instead of foreclosing on the LLC altogether. *See* IRS Manual § 5.1.21.9.1.(3), available at https://www.irs.gov/irm/part5/irm_05-001-021.

identities of their owners or shareholders. *See* N.J. Stat. Ann. 42:2C-4(a). However, the LLC does not need to be joined in this action, because both Dr. Driscoll and Dr. Vockroth are joined in this action, (*see* ECF No. 29); they are the only people who have decision-making power over the LLC's activities, (*see* SUMF ¶ 7–8); and they can (and are) adequately representing the LLC's interests in this case. *See Foster Owners Co. v. Farrell*, 2015 WL 778758, at *6 (D.N.J. Feb. 24, 2015) (holding that, because all members of a small LLC were parties to a case, even if the LLC were a necessary party under Fed. R. Civ. P. 19(a), it is not an indispensable party under Fed. R. Civ. P. 19(b)). Accordingly, this argument fails.

Dr. Vockroth also argues that under New Jersey law and the Internal Revenue Service's ("IRS") manual, a charging order is the only appropriate remedy. (Def. Opp. at 13–16.); *see also* NJ. Stat. Ann. 42:2C-43 (determining that a charging order transferring an interest in an LLC is the "sole remedy of a judgment creditor"). But neither New Jersey law nor the IRS manual binds the Court in this case. Although New Jersey law allows a charging order as the "sole remedy of a judgment creditor," *see id.*, the Government is not bound by the state laws of an ordinary creditor when it forecloses pursuant to § 7403. *Rodgers*, 461 U.S. at 697 ("The Government's right to seek a forced sale of the entire property in which the taxpayer has an interest does not arise out of its privileges as an *ordinary creditor*, but out of the express terms of § 7403." (emphasis added)). Furthermore, even if the Government *were* an ordinary creditor, state law would still not apply because the Court here is dealing with the effectuation of the underlying property interest. *Id.* at 683 ("Although the definition of the underlying property interests is left to state law, the *consequences that attach* to those interests is a matter left to federal law." (emphasis added)).

The IRS manual is similarly not binding on the Court, because "it is well-settled that the provisions of the [IRS Manual] are directory rather than mandatory, are not codified regulations,

and do not have the force and effect of law." *Cavananaugh v. United States*, No. 03-250, 2004 WL 880442, at *8 n.12 (D.N.J. Mar. 23, 2004) (citing *In re Pransky*, 318 F.3d 536, 544 n.7 (3d Cir. 2003)). Therefore, the Court may, in its discretion, order a forced sale of the entire LLC, pursuant to 26 U.S.C. § 7403.

### B. *UNITED STATES V. RODGERS*

The Supreme Court has recognized that the Government's "power to enforce the obligations of the delinquent taxpayer" is "grounded in the constitutional mandate to 'lay and collect taxes.'" *Rodgers*, 461 U.S. at 697 (quoting U.S. Const. art. I, § 8, cl. 1). Indeed, the Government "has the right to pursue the property of the delinquent taxpayer with all the force and fury at its command." *Id.* (cleaned up). This power extends beyond the privileges of an ordinary creditor, and it is instead borne "out of the express terms of [26 U.S.C] § 7403." *Id.*

The Tax Code contemplates a two-step process for the foreclosure of property to satisfy a tax debt. *First*, the Government can place a lien on any of the delinquent's pieces of property, under 26 U.S.C. § 6321. Although a physical piece of real estate might be the most obvious target for a government lien, "the statutory language [of § 6321] is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have. Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *United States v. Craft*, 535 U.S. 274, 283 (2002). *Then*, once the lien is attached, the Government may file an action in district court to *enforce* the lien. *See* 26 U.S.C. § 7403(a). The district court is directed, then, to adjudicate the merits of the potential foreclosure, and, if the interest of the United States is established, the court "*may* decree a sale of such property." 26 U.S.C. § 7403(c) (emphasis added). As part of this adjudication, the district court must make party to the action "all persons having liens upon or claiming any interest in the property" at issues. 26 U.S.C. § 7403(b).

The Government has extensive ability to impose a lien and ultimately foreclose on a wide variety of properties, but that power is not limitless. In the seminal case of *United States v. Rodgers*, the Supreme Court marked the contours of the Government's power under § 7403 to force a judicial sale of a property when that sale might negatively affect an innocent third-party with no tax delinquency. *See generally* 461 U.S. 677 (1983). In *Rodgers*, the Government sought foreclosure under § 7403 of a man's interest in the home he shared with his wife. *Id.* at 687. Under state law, however, the man's wife was also entitled to an interest in the home, and therefore a sale of the *entire* home would deprive her of her property interest, despite the fact that she had no tax delinquency herself. *Id.* The Court held that it must "read the statute to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property." *Id.* at 693. Nonetheless, relying in part in the word "may" in Section 7403(c), the Court also held that Congress did not intend for a "district court to authorize a forced sale under *absolutely all* circumstances" but that there is "limited room" in the statute for "the exercise of the [district court's] reasoned discretion." *Id.* at 706 (emphasis added).

The *Rodgers* court introduced a four-factor balancing test that is designed to "take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id.* at 709. In determining whether a forced sale under § 7403 would cause undue hardship to an innocent third party, a court must consider:

> (1) the extent to which the Government's financial interests would be prejudiced it if were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;
>
> (2) whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that separate property would not be subject

to forced sale by the delinquent taxpayer or his or her creditors;

(3) the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation; and

(4) the relative character and value of the non-liable and liable interests held in the property.

*United States v. Bogart*, 715 F. App'x 161, 169 (3d Cir. 2017) (quoting *Rodgers*, 461 U.S. at 710–11) (cleaned up). These factors are "not an exhaustive list." *Rodgers*, 461 U.S. at 711. Courts are encouraged to rely on "common sense and consideration of special circumstances." *Id.* Still, despite the many considerations allowed on behalf of the non-liable third party, the "limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.*

## C. The *Rodgers* Factors Applied

Here, the Government deploys § 7403 to foreclose on two separate properties related to Dr. Driscoll's dental practice: the Real Property and the LLC. For each property, the Court must apply the *Rodgers* factors to determine whether Defendant's interests outweigh the Government's "paramount interest in prompt and certain collection" of taxes. *Rodgers*, 461 U.S. at 711.

It is undisputed that Drs. Driscoll and Vockroth each owned a 50% stake of the Real Property as tenants in common (SUMF ¶ 6.). It is also undisputed that Drs. Driscoll and Vockroth each owned 50% of the LLC. (*Id.* ¶ 8.) As a pathway to recover Dr. Driscoll's unpaid taxes, the Government imposed liens on Dr. Driscoll's 50% interest from 2011 through 2020—each of the years that Dr. Driscoll failed to pay his taxes. (SUMF ¶¶ 1–2.) The plain language of § 7403 permits the Government to foreclose on Dr. Driscoll's share of the Real Property and LLC alone, particularly since Dr. Driscoll does not contest his delinquency and Dr. Vockroth would not object to such a sale. *See Rodgers*, 461 U.S. at 709 ("We can think of virtually no circumstances . . . in

which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself.") Rather, Dr. Vockroth only objects to the sale of his own share in the properties. (*See* Def. Opp. at 2.)  The Government wants to sell the *entire* Real Property and LLC in order to best recoup what it is owed and "end this inefficient and wasteful use of taxpayer money." (Pl. Rep. at 3.) Dr. Vockroth argues that, applying the *Rodgers* test,[6] the remedy of a complete forced sale is not justified because he will lose his investments, incur significant tax obligations, and be forced to displace his employees and patients. (Def. Opp. at 2.) Each factor and the parties' relevant arguments are considered below.

### i.    <u>Factor One</u>

The first of the *Rodgers* factors is "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." *Bogart*, 715 F. App'x at 169 (quoting *Rodgers*, 461 U.S. at 710). Prejudice alone is not enough to satisfy this factor: "the higher the expected market price, the less the prejudice, and the less weighty the Government's interest in going ahead with a sale of the entire property." *Rodgers*, 461 U.S. at 710. More specifically, this factor inquires into how detrimental it would be for the Government to be able to sell only half of the property, as opposed to the whole thing. *See United States v. Cardaci*, 856 F.3d 267, 275 (3d Cir. 2017); *see also Rodgers*, 461 U.S. at 694 ("It requires no citation to point out that interests in property, when sold separately, may be worth either significantly more or significantly less than the sum of their parts.").

### 1.  *Real Property*

The first *Rodgers* factor weighs definitively in favor of a forced sale. It is important to

---

[6] Although the parties briefing analyzed the potential sale of the Real Property through the lens of the *Rodgers* factors, neither party applied that same analysis to the sale of the LLC. Since a lien attached to both properties, the Court is nonetheless required to deploy the *Rodgers* factors to consider the interests of third-party owners. *Rodgers*, 461 U.S. at 710.

consider whether a potential buyer really exists for a Dr. Driscoll's share of the real property alone: for example, since Dr. Vockroth owns a 50% share as a tenant in common with Dr. Driscoll, a person who buys Dr. Driscoll's share alone would also be buying the requirement to share the Real Property with Dr. Vockroth. *See, e.g.*, *Cardaci*, 856 F.3d at 275 (forcing the sale of a full home because no one would want to live in a home with the previous occupant). Even if a purchaser exists for Dr. Driscoll's share of the Real Property, that purchaser faces a number of difficulties including co-using the space with Dr. Vockroth, which may not be possible, or choosing to invest in a small property with an unknown market.

The market for Dr. Driscoll's stake in the Real Property alone is, at best, quite limited. And "[w]hen there is no market for a partial interest in the property, [the first *Rodgers*] factor will weigh significantly in favor of a forced sale." *Cardaci*, 856 F.3d at 275. Here, it appears the market for a 50% share of the Real Property weighs "significantly" in favor of a forced sale, due to the inherent limitations of a 50% interest. Furthermore, the 50% interest's lack of marketability has become evident in real time during the pendency of this litigation. The Court notes that it availed the Defendants several months to attempt to come to a resolution short of a court-ordered forced sale. (*See, e.g.*, ECF No. 93.) The Government's interest in this factor is further strengthened because Dr. Driscoll appears to have no other property on which to foreclose, other than his interests related to the dental practice. *See United States v. Hovnanian*, No. 18-15099, 2022 WL 17959583, at *9 (D.N.J. Dec. 27, 2022), *aff'd* No. 23-1338, 2024 WL 411726 (3d Cir. Feb. 5, 2024) (finding the Government's strong interest in a forced sale because "there is no evidence that [defendant] has any assets other than the properties enumerated herein that the government could attach to satisfy the debts").

In response, Defendant contends that the Government has not presented any facts showing

that a partial interest would harm its delayed collection.[7] (Def. Opp. at 5.) Although neither party submitted an appraisal as to the potential value of the property,[8] the lack of valuation is not dispositive, since it is already clear that there is no market for the partial sale. *See Cadaci*, 856 F.3d at 275 (finding that the first factor weighed in favor of the Government because there was no market for the partial share of the property at issue). Therefore, Defendant's contention with the lack of "facts" is unavailing, and the first *Rodgers* factor weighs definitively in favor of a forced sale.

### 2. LLC

The first *Rodgers* factor also weighs in favor of a sale of the LLC. As limited as the market is for a 50% share of the Real Property, the market appears even *smaller* for a 50% share of an LLC dental practice that already has employees, clients, and another dentist practicing. *See Cardaci*, 856 F.3d at 275 ("When there is no market for a partial interest in the property, this factor will weigh significantly in favor of a forced sale."). Any buyer of a 50% interest in the LLC would have to either practice alongside Dr. Vockroth, or solely receive payments from the LLC, leaving

---

[7] Defendant also attempts to distinguish the present case from other cases authorizing forced sales of third-party property by pointing to the fact that, in most other cases, the two co-owners are a married couple living in a home together, not business partners sharing a dental office suite. (Def. Opp. at 7); *see also, e.g.*, *Rodgers*, 461 U.S. at 687–88; *Cardaci*, 856 F.3d at 275; *Bogart*, 715 F. App'x at 167–68; *United States v. Jones*, 877 F. Supp. 907, 917–18 (D.N.J. 1995), *aff'd* 74 F.3d 1228 (3d Cir. 1995). This argument is better addressed under the second *Rodgers* factor, because it is related to the Defendant's interest in the property.

[8] In its Reply Brief, the Government included an affidavit from Roger Sweeny, IRS Property and Liquidation Specialist. (ECF No. 79-1.) The affidavit includes an "anticipated fair market value price" for the Real Property and estimates a half-interest of that property. (*Id.* at ¶ 11.) However, these new facts were not included in the Government's opening brief, and Defendants have not been able to respond to them. Therefore, the Court cannot—and will not—consider these facts on a Motion for Summary Judgment. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) (vacating the decision of a district court that relied on new evidence introduced in the moving party's reply brief). The Court notes two facts that it can appropriately rely on that are helpful, but not dispositive in establishing valuation: *first*, Drs. Driscoll and Vockroth purchased the Real Property in 2005 for $300,000. (ECF No. 75-5.) *Second*, according to his accountant, "Dr. Vockroth's basis in the real estate is $153,504." (ECF No. 78-1 at ¶ 4.) Neither of these facts establish a figure that the Government could expect at sale, but they underscore the conclusion that 50% of the Real Property might not satisfy Dr. Driscoll's entire tax debt.

Dr. Vockroth to be the sole practitioner or hire other employees. While this offer could theoretically be attractive to the right buyer, the time period to complete such a sale is compressed and it is undisputed that no buyer has materialized in the many months that Dr. Vockroth and Dr. Driscoll were purportedly attempting to sell the LLC share. (*See* ECF Nos. 86, 89, 93.) Dr. Vockroth points to no evidence suggesting that the Government would not be financially prejudiced by a sale of 50% of the LLC. This first factor, therefore, weighs in favor of sale.

    **ii.**    <u>**Factor Two**</u>

The second *Rodgers* factor is "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Rogers*, 461 U.S. at 710–11. To determine the third party's "legally recognized expectation" in their own property interest, federal courts are instructed to look to state law. *Brown v. United States*, 496 F. Supp. 903, 908 (D.N.J. 1980) ("The nature and extent of interests in property, especially real property, are governed by state law even when the Internal Revenue Code is applicable, and both federal and state courts must apply state property law."). The "consequences" that attach to the state property interests, however, "are a matter left to federal law." *Jones*, 877 F. Supp. at 916 (quoting *Rodgers*, 461 U.S at 683).

    *1. Real Property*

Here, it is undisputed that Dr. Driscoll and Dr. Vockroth own the Real Property as tenants in common. (SUMF ¶ 6.) Therefore, the ultimate question as it relates to this second factor is whether, under New Jersey law (where the property is located), Dr. Vockroth as a tenant in common with a 50% interest in the property might be subject to a forced sale.

The answer to this question is yes. In New Jersey, a tenancy in common is the default form

of joint ownership, since, unlike joint tenants or tenants by the entirety, tenants in common do not need to specify their preferred ownership type during an acquisition or transfer of property. *See* N.J. Stat. Ann. 46:3-17 (asserting that no estate shall be a joint tenancy unless is expressly granted or devised). Each tenant in common has a right to possess and enter the entire property, regardless of the share owned by each tenant. *Hart v. Shapiro*, 180 A. 686, 687 (N.J. 1935). Additionally, each tenant in common may transfer his interest "without the consent of the remaining cotenant." *Capital Finance Co. of Delaware Valley, Inc. v. Astervadi*, 912 A.2d 191, 196 (N.J. Sup. Ct. 2006). Defendant argues that since tenants in common have few protections and operate somewhat independently of one another—each with free range of the property and full ability to alienate his shares at any point—a tenant in common like himself would not have a legal expectation that he might be affected by a forced sale. (Def. Opp. at 8.) Defendant fails to recognize the existing viability of forced partition sales. Under New Jersey Law, either tenant in common may ask the court to grant a partition. *See Newman v. Chase*, 359 A.2d 474, 477 (N.J. 1976). When it would not be possible for a court to partition the property in such a way that gives each party the requisite amount of ownership stake without great prejudice to the owners, a court may "direct the sale thereof." N.J. Stat. Ann. § 2A:56-2. The present case is, in many ways, the ideal candidate for a forced partition sale, because it would be impossible, without great prejudice, to grant Dr. Vockroth or Dr. Driscoll (or the Government) just half of the Real Property. A new buyer is not necessary to force a partition sale, and thus Dr. Vockroth does not have a legal expectation that his property would not be sold.

This conclusion is also supported by the fact that, unlike tenants by the entirety or joint tenants, tenants in common enjoy no protections from forced sales or partition actions. *See Asterbadi*, 912 A.2d at 196 ("Real Property held by spouses as tenants by the entirety may not be

partitioned. By contrast, real property held by tenants in common may be partitioned."). Even in the case of a forced sale, Dr. Vockroth, as tenant in common, would still be compensated for his share of the sold Real Property, thereby further diminishing any legal expectation that there would be no forced sale at all. *See Rodgers*, 461 U.S. at 714 & n.2 (Blackmun, J. concurring in the result and dissenting in part) ("In most situations in which a delinquent taxpayer shares property with an unindebted third party, it does no violence to this principle to order a sale of the entire property *so long as the third party is fully compensated*." (emphasis added)). Therefore, because it is fully possible under New Jersey law that a court could force a sale of the Real Property, and because there is no question that Dr. Vockroth would be fully compensated for the sale, the second *Rodgers* factor also weighs in favor of a forced sale.

### 2. LLC

As to the LLC, on the other hand, the second factor weighs in favor of Dr. Vockroth, and against a forced sale. In the case of the LLC, the Government and Defendant disagree as to the extent of state law applicability. Dr. Vockroth contends that, under New Jersey law, Dr. Driscoll's 50% interest in the LLC does not grant Dr. Driscoll the ability to "participate in the management and conduct of the [LLC's] activities" because Dr. Driscoll dissociated from the LLC during a bankruptcy proceeding and is now merely a transferee of the LLC, not a full member. (Def. Opp. at 14–15.) The Government does not dispute that Dr. Driscoll is a dissociated member of the LLC, but argues that when asking the court to act pursuant to § 7403, the Government is not bound by state law. (Pl. Rep. at 11–12.) The Government is correct in that New Jersey law will not preclude the Court from ordering a forced sale, but the property interests provided under state law are still relevant to the Court's inquiry under the second *Rodgers* factor. Therefore, the Court must determine whether, under New Jersey law, Dr. Vockroth would have a "legally recognized

expectation" that the LLC would not be subject to a forced sale by Dr. Driscoll's creditors. *See Rodgers*, 461 U.S. at 710–11.

New Jersey law, which adopts the Revised Uniform Limited Liability Company Act ("RULLCA"), requires the consent of *all* members in an LLC to "sell, lease, exchange, or otherwise dispose of all, or substantial all, of the company's property." N.J. Stat. Ann. § 42:2C-37(c)(4)(a); *see also In re Crest By The Sea, LLC*, 533 B.R. 540, 545 (D.N.J. 2014) ("The RULLCA requires a unanimous vote of the members of an LLC to undertake actions outside of the ordinary course."). It is undisputed that Dr. Driscoll and Dr. Vockroth are the only two members of the LLC. (SUMF ¶ 7.) Therefore, under the relevant state law, it is clear that the LLC could only be sold if *both* Dr. Driscoll and Dr. Vockroth voted to sell it (and it is undisputed that Dr. Vockroth has not consented to a sale).

Some property interests, like the tenancy in common discussed above, provide owners little assurance that their co-owner will not force a partition sale at any given time. Others, like tenancies by the entirety, provide a great deal of protection against unwanted sales. *See Jones,* 877 F. Supp. at 918 ("Additionally, as owner of property as a tenant by the entirety, [the wife] could legitimately believe that the family home would be protected against her husband's creditors by virtue of New Jersey's special treatment of this type of property ownership."). If these property interests exist on a continuum, with tenants in common on one end of the spectrum and tenants by the entirety on the other, it stands to reason that the property interests of two co-members in an LLC incorporated in New Jersey arguably fall somewhat closer to the tenancy by the entirety end than the tenants in common end. *See Rodgers*, 461 U.S. at 711 (utilizing the continuum metaphor to describe various property interests).

The Government relies in part on *United States v. Wilhite*, a case from the District of

Colorado, where the district court found that a co-owner in an LLC *did not* have an expectation that the LLC would not be subject to forced sale. No. 00-cr-504, 2018 WL 1334845, at *4 (D. Colo. Mar. 14, 2018). However, in *Wilhite*, the two owners of the LLC were a husband-and-wife pair who worked together to hide the delinquent's assets and "defraud the government," leading the court to conclude that the non-liable co-owner "[could] hardly claim surprise about a sale." *Id.* The same cannot be said of Dr. Vockroth, who was indisputably not involved in the Driscolls' tax delinquency in any way. As stated above, Dr. Vockroth did not consent to this sale. Therefore, this second *Rodgers* factor weighs in favor of Dr. Vockroth and against a forced sale.[9]

### iii.    **Factor Three**

The third *Rodgers* factor is "prejudice to the nonliable interest holder in terms of personal dislocation costs and undercompensation of interest." *Jones*, 877 F. Supp. at 918 (citing *Rodgers*, 461 U.S. at 711).

### 1.    *Real Property*

The third *Rodgers* factor weighs in favor of a forced sale as it relates to the Real Property. The Government argues that there is virtually no prejudice to Dr. Vockroth, the non-liable interest holder, because he will be paid 50% of the sale price (equal to his ownership share), and he can continue to practice dentistry at a new location.[10] (Pl. Rep. at 4–5.) Dr. Vockroth, on the other hand, asserts a myriad of disruptions that he predicts will result from the sale, including forcing him to close his dentistry practice, fire his five employees, lose relationships with his 5,000 dental patients, and look for a new business location. (Def. Opp. at 12–13.) Dr. Vockroth also invokes a

---

[9] To be clear, this single factor does not *preclude* the Court from authorizing the sale in its discretion.

[10] Although many of Dr. Vockroth's theorized contentions about prejudice likely relate more to the particulars about the proposed forced sale of the LLC, rather than the forced sale of the Real Property. The prejudice to Dr. Vockroth for sale of the Real Property alone appears to be "no greater than any other foreclosure sale" with "no special dislocation costs to consider here." *Cardaci*, 856 F.3d at 276.

2009 PNC line of credit, arguing that he alone will be required to pay back the credit if the forced sale goes through. (*Id.*) Vockroth's dire predictions are mere speculation. People move their homes and businesses all the time, and Dr. Vockroth is not unduly prejudiced by having to sell the current location of his dental practice, especially compared to those more often affected by the *Rodgers* factors—individuals forced to sell their marital homes. *See, e.g.*, *Jones*, 877 F. Supp. at 918. While this may be disruptive, it is not unduly prejudicial. Thus, the third factor therefore weighs in favor of a sale.

2. *LLC*

The third *Rodgers* factor, prejudice to the non-liable property owner, also weighs in favor of a forced sale as it relates to the LLC. In a self-serving affidavit, Dr. Vockroth asserts that he will be "forced to lay off all of [his] employees," and that he will "no longer able to see [his] patients." (ECF No. 78-2 at ¶¶4-5.) Dr. Vockroth, however, does not provide citations to any expert report supporting such a doomsday prediction of firing his employees, losing all of his patients, and having literally to start from ground zero. Furthermore, even if Dr. Vockroth is negatively affected by the LLC sale in some way, this is not undue prejudice of a magnitude to prevent a forced sale. It is axiomatic that LLCs and partnerships change, fail, dissolve and are bought and sold with regularity. Partners die or retire or sell their shares. This reality is simply part of being in business, and Dr. Vockroth's LLC is not exempt from this fact, especially when he fails to offer any reliable evidence to support his contentions.

Dr. Vockroth also stands to *benefit* from the sale of the LLC because he will be paid 50% of the proceeds from the sale. *See Rodgers*, 461 U.S. at 711 (including in the third factor both dislocation costs and "practical undercompensation"). These funds will allow Dr. Vockroth to find a new location for a dental practice. Dr. Vockroth also provides a declaration from his accountant,

asking the Court to consider the tax implications of a sale the LLC. (*See* ECF No. 78-1 ¶ 3 (asserting that a forced sale "would compel [Vockroth] to realize gains resulting in a sizeable tax event").) The compensation from the sale, however, can also help Dr. Vockroth pay any tax liabilities of his own.[11] Therefore, although Dr. Vockroth will be impacted by the sale of the LLC, he has failed to demonstrate with any degree of specificity the prejudice he will experience.

### iv.  **Factor Four**

The fourth *Rodgers* factor is "the relative character and value of the non-liable and liable interests held in the property." *Rodgers*, 461 U.S. at 711. This final factor is most often implicated "when the liable party owns only a relatively small fraction of the property. For example, if the liable party owned property inherited from a parent as a tenant in common with five other siblings, the relative value of the property would weigh against a forced sale. But if the liable party owned a mansion on the property while the siblings owned only the surrounding land, the character of the liable party's interest might then weigh in favor of a forced sale." *Cardaci*, 856 F.3d at 279.

The fourth factor weighs neutrally as to both the Real Property and LLC. Here, it is undisputed that Drs. Driscoll and Vockroth each own 50% of the Real Property and LLC; neither one owns more than the other. (SUMF ¶ 6–8.) Therefore, this factor is also neutral. *See Bogart*, 715 F. App'x at 170; *Hovnaniam*, 2022 WL 17959583, at *9.

### v.  *Rodgers'* **Additional Considerations**

The *Rodgers* Court warns against using the four factors as a "mechanical checklist" and directs courts to employ "common sense and consideration of special circumstances." *Rodgers*, 461 U.S. at 711.

---

[11] The Court finds unavailing Dr. Vockroth's argument about the tax implication because of course, as with any asset, Dr. Vockroth would have tax liability whether through a forced sale now or a voluntary sale down the road.

### 1.  Real Property

The most salient additional considerations with regards to the Real Property are the impact of a forced sale on Dr. Driscoll and Dr. Vockroth's employees and patients. *See Cardaci*, 856 F.3d at 272 (considering "the impact a forced sale would have on other non-liable parties"). Dr. Vockroth asserts that he employs five people and takes care of 5,000 patients. (Def. Opp. at 12.) Each of these people—including Dr. Vockroth himself—might be inconvenienced by sale of the Real Property, having to work or go to the dentist in a new place that might not be as close by or easily accessible. Alternatively, a new location might be *more* advantageous for both Dr. Vockroth and his employees and more convenient for his patients. Regardless, the Court does not find that the common sense considerations discussed by the *Rodgers* Court underlying a forced sale of the Real Property here sufficiently weigh in favor of halting the forced sale.

### 2.  LLC

Again, the Court considers other non-liable third parties, such as the patients and employees of the dental practice. (*See* Def. Opp. at 9.) These considerations do not weigh against forced sale. Dr. Vockroth, aside from his unsubstantiated, dire predictions set forth in his brief and affidavit, has provided the Court with no expert report or analysis demonstrating these doomsday speculations.  Those individuals are free to continue to associate with the LLC after sale or find another dentist or place of employment. The *Rodgers* Court has explicitly highlighted the "limited discretion accorded by § 7403" and how such discretion "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 709. Given these restrictions, and the fact that the circumstances presented here do not outweigh the Government's "paramount interest in prompt and certain collection of delinquent taxes[,]" any equitable balancing weighs in favor of the forced

sale of the LLC.

The Court, having considered the four *Rodgers* factors and additional common-sense consideration of special circumstances, finds that the Government is entitled to foreclose on both the Real Property and the LLC in their entirety. The Government's Motion for Summary Judgment is **GRANTED.**

### D. FORECLOSURE

The Court hereby reserves decision on all objections to the Order of Sale (*see* ECF No. 79-3), until the resolution of the following: the Court seeks the parties' input on how to effectuate the sale in the most prudent and efficient manner. Consistent with the Order accompanying this Opinion, the Court **STAYS** the enforcement of any foreclosure proceedings.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 75) is **GRANTED.** The foreclosure is **STAYED** pending additional input from the parties. An appropriate Order will accompany this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: January 6, 2025